Arturo Gonzales v. Police Officer Bickler. Good morning, Your Honors. May it please the Court, Janna Gershman v. Arturo Gonzales. Good morning, Your Honors. Carol Ann Rohr v. Police Officer Bickler, Lucio Legerski, and Carranza. Okay. Well, you just have, you come up one at a time, see. That's the way we do it here. And you don't have to announce your presence one right after the other. Just when your time comes up. But if you want to both stand there and look at me, that's all right. Which party would you like to hear from first? What did you say? Would you like to hear from the appellant first? Oh, yeah. That's the way we do it. Okay. Your Honors, here we have a grant of summary judgment that was improperly granted. When the appellate court reviews grants of summary judgment, particularly in excessive force cases and 1983 actions, the appellate court must determine, viewing the light, viewing the evidence in the light most favorable to the non-moving parties, in this case was the appellant Arturo Gonzales. Whether there were any genuine issues of material fact and whether the district court correctly applied the proper substantive law. Here, it is clear that both were improperly handled by the district court. For starters, there are numerous triable issues of fact. Triable issues of fact not only regarding the circumstances as they confronted the officers, but even triable issues of fact as to what actually happened at appellant's doorstep. The single most important triable issue of fact is whether or not Arturo Gonzales battered Officer Carranza, whether or not he did anything to interfere with the arrest of his brother, and furthermore, whether or not his brother Oscar Gonzales was even present at the time. Even within the officer's own reports, there are numerous inconsistencies. Some officers claim that there was a second and third struggle, during which there was a struggle over Oscar Gonzales where Arturo allegedly attempted to interfere. However, Officer Legersky's own report states clearly that when he sprayed the pepper spray directly into Oscar's face, he immediately retreated inside his house, such that Officer Legersky was not even able to ascertain the effects of the pepper spray on him. That is consistent with Oscar's version of the facts, with Arturo's version, that when he ran into the bathroom, his brother was already there washing the pepper spray out of his eyes. Therefore, if Oscar immediately retreated, such that Officer Legersky was not even able to ascertain the effects of the pepper spray, how is it possible that there was this alleged confrontation over Oscar, if Oscar was not even there? What facts do everyone – what facts – let me take it from the other end. What facts does everyone agree upon, if any? Hardly any, Your Honor. You say all the facts are in dispute here between the courts. Numerous facts are in dispute. There are no facts that are agreed upon? There are some facts that are agreed upon, perhaps in the beginning with Oscar, that the fact that he ran away, that he went to his house, that the officers might have asked for him to remove his hands, some of those facts are not disputed. But the highly disputed facts, and even though they're not technically before the court, as I believe we briefed in our papers, I'm only handling the appeal part of it. I was not the attorney who handled it before, and crucial information, I believe, was omitted from the district court's record. However, should this be revanded down to the trial level, all of that evidence will be before the trial, in fact. In particular, the circumstances confronting the officers. In these cases, it is very important what the circumstances were under which the officers were acting, whether they had objective, reasonable beliefs. And here, there's numerous disputed facts, not only with the detention of Oscar, the dangerousness of the situation, the timing that was off, the shots that were allegedly fired, which were actually, appeared to be shots that were fired by the officers themselves when they were already at the Gonzales doorstep. But like I said, the most important tribal issues, in fact, are what Arturo Gonzales did. If the jury believes Arturo Gonzales, which a criminal jury did believe, that he did not batter Carranza, that he did not interfere with Oscar, that Oscar was not even there, then the jury could properly draw inferences that the officers batoned him, they sprayed him with pepper spray, they yanked him by the hair and the arm for no reason. In fact, Your Honor, I believe that if we get an opportunity to go back down to the trial court, we will be able to establish a solid case that it was the officers' own conduct that created this escalated situation and thereby violated Arturo's constitutional rights. Because of these numerous factual disputes, it was improper for the district court to not look at the evidence in light most favorable to Arturo and grant some re-judgment. Excuse me. Furthermore, Your Honors, not only are there numerous tribal issues of fact, tribal issues of fact which cannot be determined by the court, Rule 56 requires that there be no genuine issues of material fact. That is exactly the purpose why we have Rule 56, is to not violate people's Seventh Amendment rights to jury trials. Here, there was a clear violation of that. There are numerous facts which the jury should be able to hear. There are different versions. But more importantly than that, even if we were to find that there were no disputed facts, that the facts are exactly as officers alleged that they were, the court applied the improper law. By granting the defendants of Pelley's qualified immunity defense based on the officers' subjective beliefs, what they themselves perceived, that's improper. Anderson v. Creighton, Rand v. O'Connor, numerous cases state that it is an objective standard. What the officers themselves believed is absolutely irrelevant. And the district court, I mean, it's a very small record, but there's one little paragraph which clearly says the officers, based on what they perceived, did not violate his constitutional rights. And that was, that's clear. Well, I think that when they said that, when they said what they perceived, they might have left off the adjective reasonably perceived. Well, I appreciate your argument. I understand what you're saying. The facts are a dispute. Yes, but with all due respect, Your Honor, even with respect to the reason, even if what they reasonably perceived, that's still not the proper standard. It's not what they reasonably perceived. It's what an objective officer under those circumstances would have perceived. Now, first of all, those very circumstances are highly disputed. And the fact that a criminal jury acquitted Arturo Gonzalez, granted it's a different standard, a different burden of proof, there were the same facts, and even the district attorney in his summation, he concedes. If you believe Arturo's version or if you believe the officer's version, well, the jury believed his version. And if they have a chance to believe his version again, that he never interfered, that he just came downstairs in his boxer shorts, he was sleeping on a Sunday night, and he was battered and batoned for no apparent reason, then they can clearly find that they violated, the officer violated his constitutional rights. Okay. We have your argument in hand, and let's hear from the other side. Thank you, Your Honor. It's the totality of the circumstances that is critical here. This was a dynamic situation at night in an area known to be frequented by gangs. It was a dangerous situation to these officers, a dynamic, fast-moving situation. And the reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene. Well, isn't that something for a jury to decide? Not when the court, as in this case, has the opportunity to find qualified immunity, as Judge Reel did. And that qualified immunity must look at whether there is a constitutional violation, and it's And if I qualify immunity when the facts are in dispute as to what the officer reasonably and objectively perceived, if the historic facts are in dispute as to what the officer has perceived, since from your adversary's point of view, this was a police riot, not a civilian riot, that's their factual position. I believe a close look at the facts shows that they are not in dispute. Well, that's the question here. Show us why the facts are not in dispute. He claims he was just an innocent bystander standing around, and he got sprayed and battered. First of all, he admits to being aware that the police are attempting to apprehend Oscar, his brother. He admits to screaming. He admits that he and his father are screaming. He, not only Arturo, but Rogelio and Nancy, the two younger children who are also all out on this small back stoop at the back of a property late at night, Nancy hears Arturo screaming, and Rogelio sees Arturo struggling with the officer. He denies it. Arturo denies that he was struggling with the officer. Rogelio, who is his brother, who is present, who is on that stoop that night, sees Arturo struggling with the officer. Well, maybe 25 bishops saw him doing that. The man denies it. That does not make a question of fact? I do not believe so, because the Court needs to look at the totality of the circumstances and also the more implausible the claim, i.e., that Arturo was just standing there in his shorts doing nothing when the police are looking for an ADW suspect. Ten individuals are detained out in front of the house. The whole family is at the front door. Oscar's running in. Oscar's running out. The officers are trying to cuff him. He is resisting them. And it is so lacking in credibility that Arturo — Well, just a minute. Just a minute. You know, you're painting a picture, which may be the facts, but he claims he's just sitting there in his boxer shorts or standing there in his shorts, fact-dumb and happy, and all of this is going on, and he gets battered and scraped. Now, it may be a cock-and-bull story that he's conjured up, or it may be the God's honest truth. Who are we or any judge to make that question a fact as to whether or not he's lying through his teeth or he's telling an absolute factual condition that existed? I believe in the qualified immunity inquiry, the Court needs to look at the totality of the circumstances. But first, just one thing. Before you get into qualified immunity, don't you have to first satisfy yourself as to what the facts are? Can you make a qualified immunity analysis as a judge when the factual dispute before you is in flux and disputed? I believe if you look at all of the facts, all of the surrounding facts — Which are in dispute. I don't believe they are. Well, I see them to be — you and I are not on the same wavelength. I see them to be in dispute. And answer me this question straight out. If the facts are in dispute, is the Court in a position to make a qualified immunity analysis? I believe the Court can still look at qualified immunity. If they determine there's a constitutional violation under Saussure, the next step is to then look at whether the law was clearly established. Even if the facts are in dispute? Yes, the Court can go there. You know, it doesn't really work that way. And, you know, we have a case where we've held or said that summary judgment as a matter of law in excessive force cases should be granted sparingly. But on the flip side, there are so many cases that talk about the purpose for summary judgment so officers are not deterred from going forward in a situation such as this where it is — there's an ADW suspect, that it's late at night, it's a challenging situation. There's a purpose for qualified immunity. And I believe in this case, we need to look very carefully at all four officers. We have Bickler, who's allegedly pulled Arturo's hair. We have Lucio, who allegedly his arm comes — just his arm comes in contact with Arturo's arm. We have Legersky, who arrives on the scene, sees the officers, guns drawn, people in front of the house coming in and out, people detained out front, who uses OC directed directly at Oscar, not at Arturo. And Arturo only receives an auxiliary over spray. Collateral. The word's collateral. Collateral. Collateral damage. Collateral damage. That's a military expression. Correct. Minor collateral damage. And if any. And we need to look carefully at all four officers here. Carranza is only one of those officers. Carranza uses the baton. He admittedly uses the baton when Arturo, according to Carranza, grabs him to prevent him from trying to contain and control Oscar, who is resisting even being handcuffed. So I think it's important under the qualified immunity to look at all four officers. And also to look at the testimony of Rogelio, who is standing right there, admittedly, the whole time, and says he sees Oscar struggling with the officers. Also. What do we do with the following? Because I think you're quite right to focus our attention on the fact that there are four officers here, and all of them obviously doing different things in support of one another, but doing different things. What if one officer's action considered all by itself? For example, pulling Arturo's hair. That all by itself is not excessive force. Assume for a moment that that's so. Is he nonetheless potentially liable if he's in a cooperative enterprise with the other officers, such that, for example, he's pulling his hair and holding onto him while the other officer hits him with the baton? There's no, I don't believe there's any evidence here, that he's holding onto his hair so the other officer can hit him with the baton. I do not believe there is any testimony from anyone in that regard. Bickler is interacting with Oscar, with Arturo. And in our brief, there is an exhibit of Arturo, and his hair is down to his waist. So if one was within five feet of somebody with hair down to their waist, it's possible to come in contact with that hair. Was that one of the exhibits that was not entered at the district court, or was that entered in the district court, the picture of Arturo with the long hair? I believe it was. OK. I would have to look back at the record. Is it in the excerpts? Yes, it is. I know it's in the excerpts. I've seen it. My question is whether it was properly introduced in the district court. But I can figure that out. OK. I believe that. I've seen the picture. I know the picture. Because all along, the idea of coming in contact in any form with someone with hair that long, getting a hold of that hair is a potential. And there is no evidence that that hair was being held onto so Carranza could hit him with a baton, or so that Lajerski could run up and spray him with the spray. So Bickler standing by himself, as far as the lob being clearly established. And he's just holding onto his hair just because? He was struggling with him to try to control him, because he was out front. And he was interfering with their attempt to handcuff and control Oscar, who was their suspect at that point relative to an ADW with a bottle by a Hispanic and black individual in the gang area. And that's why they were at the door, that they were following up on this serious call. And he was in the mix trying to control Oscar. Your brief does not deny that Arturo denies all of these allegations, that he was involved in any type of helping or preventing the police from doing their job. He denies it. And your brief does not say he's, I mean, you don't deny that that's his position. Correct. Now, if that's his position, that he was doing nothing, he was standing by, a witness to all of this, but not involved. And all the police officers that were there say the exact opposite. Does that make this a case ripe for summary judgment? I don't believe the facts are exactly as Your Honor represented. Well, you don't deny the fact is that Arturo claims he had nothing to do with preventing the police doing anything. He was not involved in any wrongdoing. He was there, but he does not. His position is he was a innocent bystander, in effect. He ran in, he ran out, but he did not do anything. That was illegal. Okay, he does admit to being in the location where all of this is taking on, and he admits to screaming at the office. That's not illegal, is it, to scream? No, but it does suggest there could be some involvement on his part in this highly emotional charge situation. There could be. For the whole family. But they couldn't be. All these are jury questions. Your time is up. Just one. Two, consider the other officers. Okay. Lucio, who supposedly touches the arm. Legersky, who uses the spray directed towards Oscar. I respectfully request that Your Honors consider all four officers and the qualified immunity. Now, I realize we're running over, and I'd like to have you respond. I'm just reading from paragraph nine of Arturo's declaration. It's short. While Bickler pulled me by the hair, and Lucio pulled me by the arm, Defendant Carranza repeatedly hit me on the left leg with his baton until I could no longer stand the pain, and hold onto the railing, and was knocked down on my, well, rear end. So, according to his declaration, he is being immobilized by one officer holding onto his hair, by another officer holding onto his arm, while the third officer, Carranza, beats him with the baton. Looking at our brief on behalf of the officers, where we attempt to look at the credibility of Arturo, beginning on page 20. We examine each one of those situations, because in the criminal trial that predated the summary judgment declaration, he testifies entirely differently. He does not know who pulls his hair. He does not know who touches his arm. And he thinks it's a baton, and he doesn't know who's using it. It does look like you've got a good cross-examination coming up. As great impeachment material. But as far as allowing the qualified immunity determination to stand, relative to Lucio, Lajerski, and Bickler, looking back at Arturo's own criminal trial testimony, there is no support for the fact that they are holding him down in any way. Okay. I got it. Thank you. Thank you. Rebuttal. Just a couple of points I'd like to address. For starters, Your Honors, it's not disputed that Arturo was standing in the door and possibly screaming, but if screaming is illegal, and if that is the reason to baton somebody, to pull their hair, to pull their arm, and to charge them with battering an officer, to charge them with interfering with the arrest of Oscar, then how come Mr. Gonzales, Sr., the father, was not arrested? How come the mother was not arrested? How come the brothers and sisters were not arrested? They were all there screaming, and rightfully so. It was a Sunday night. Monday was the next day. People had to go to work. Their constitutional rights were violated. Not only Arturo's in his person, but even in their home. They come to the door, and there's officers standing there with gunpoints. What were they supposed to do? And in any event, a jury could find that that is justified. Nonetheless, that does not allow an officer to do that. I've only got one question for you, and that's on the 148 conviction, resisting, delaying, or obstructing officers in the performance of their duty. He was arrested for that. He was. How is it a false arrest, even taking the facts favorable to you? Was there no reasonable cause to arrest? I mean, it doesn't take much to violate Section 148. I agree, Your Honor. However, if you believe his version of the facts, that he did nothing, that he was screaming, I don't believe the law says that screaming is enough to consider that an interference with the arrest. Well, you know, I would think it would depend on what he's screaming about, you know? I believe he was screaming, why don't you go ahead and shoot us? Why are you holding guns at us? Put them down. If you have the guns up, why don't you go ahead and shoot us? He was just really upset that these officers are violating their rights. They're standing there pointing guns at the whole family. Granted, they were all standing by the door, but, again, those the whole the entire circumstances are so disputed. Even the allegations that the ADW suspect, Oscar, if we get a chance to go back down to the trial court, that will be disputed one by one. Oscar does not nearly fit the description of the ADW suspect. Not nearly. Moreover, Lucio, one of the officers, testified that he knew this was Oscar. Meanwhile, there was one suspect by the name of Moises. The victim himself said that there was only one and one and only perpetrator. The officers are attempting to create the situation of this highly volatile situation where there could be possible gang retaliation. Well, even if there would be gang retaliation, the victim was a black person. The retaliation would most likely be by black people, not by Hispanic. Plus, there are numerous references in the criminal trial transcript that when they saw Oscar, he was standing within 10 to 20 feet of two other women, his grandmother, I believe, and his aunt. They're trying to make it look like he was hiding somewhere in the corner. It is just so highly disputed that only a jury can resolve the entire situation to figure out what's going on. Now, the fact that there was a struggle with Arturo at the door, that's not disputed. The brother saw a struggle. Yeah, he saw a struggle when Arturo was trying to get away from the officers when they were batoning him. He testified that he was trying to hold on to the doorway or somewhere to try to get back in the house while they're yanking on his hair, yanking on his arm, and beating on his leg. There definitely was a struggle, but there was no struggle over Oscar. He was struggling for his own safety to try to get back into the house. I believe, Your Honor, that if you look carefully at even the officer's own reports, it just looks like a situation where the officers screwed up and they're trying to cover up afterwards. Everyone, they're sticking in his words, even with the long hair. It's just incredible that, oh, his hair was so long, we just accidentally grabbed momentarily onto it to prevent him from running away. More likely, they yanked on his hair. It doesn't make sense from the other side also. And these are things the jury should be allowed to determine. And with respect to Arturo's credibility, one final point. There is a case law, Santos v. Gates v. Cites to Rutherford v. Berkeley, I believe it's cited in our reply papers. The court there held that even though the plaintiff was unable to recall whether three defendant officers were among the officers who had beaten him, because they were among the five or six officers who surrounded him while he was being attacked, a jury could reasonably find that the officers participated in the assault. There's another case which I actually submitted on the court form, Lawley v. County of Orange, which recently came down a couple of days ago, same thing. The plaintiff was not able to precisely say who the officers were. But later down the road, it was discovered that it was this officer or that officer. Moreover, the officers themselves admit to it. Carranza admits that he beat him. Bickler admits that he grabbed his hair. It's ridiculous to say that it's incredible because he could not at one point remember their names, and later throughout the course of this case, was able to remember their names. And with respect to that, I'd like to end on one final note. The time's up. One more. You've been hammering at us for quite a while. Thank you, Your Honors. A lot of words. I mean, you've got more words per minute in than anyone I've heard this week. Thank you. I appreciate it. Good job for both of you. Good job. Good job for everybody. OK. All right. Now we'll take number two on the calendar that's been submitted. That's Duarte versus Robards. And now, are we ready on three and four? Counsel here. Three. Yeah, three. All right.
judges: Pregerson, Cowen , W. Fletcher